UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TALENT TREE CRYSTAL, INC.,

        Plaintiff,

                                              File No.  1:04-CV-875

v.

                                              HON. ROBERT HOLMES BELL

DRG, INC.,

        Defendant.

_____/


## **O P I N I O N**

    This matter is before the Court on Defendant DRG Inc.'s motion to transfer venue pursuant to 28 U.S.C. § 1404(a).  On November 8, 2005, the Court denied DRG's motion to dismiss for improper venue after hearing oral argument from the parties.  *See Talent Tree Crystal, Inc. v. DRG, Inc.*, 1:04-CV-875 (W.D. Mich.) (Docket #22, 62).  On November 15, 2005, DRG filed the instant motion to transfer under § 1404(a).  *See* Docket #64.  DRG argues that the contractual forum selection clause, the convenience of the parties and witnesses, the accessibility of sources of proof, the costs of witness testimony, the contractual choice of law provision, and the interests of justice weigh in favor of a transfer of venue to the Southern District of Texas, Houston Division.  Plaintiff Talent Tree Crystal, Inc. ("Talent Tree"), however, argues that the forum selection clause should be given little weight, and its choice of forum, the convenience of the parties and witnesses, the costs of witness testimony, the expense and expeditiousness of trial in this district, the interest of justice, the relative

congestion of the two courts, and the public's interest in having local controversies decided locally weigh against a transfer of venue. For the reasons stated below, the Court grants DRG's motion to transfer venue to the Southern District of Texas, Houston Division.

I.

This case involves the alleged breach of a franchise agreement by DRG. Talent Tree is in the business of operating and licensing temporary employee staffing businesses. Talent Tree's principal place of business is located in Houston, Texas. DRG is a franchisee of Talent Tree and is located in Grand Rapids, Michigan. This case represents the fifth round of litigation between these parties regarding their franchise agreement. In addition to the present matter, this Court has presided over two previous cases involving this agreement. *See DRG, Inc. v. Talent Tree, Inc.*, No. 1:02-CV-401 (Quist, J.); *DRG, Inc. v. Talent Tree Staffing Services, Inc.*, No. 1:96-CV-553 (Bell, C.J.). Both DRG and Talent Tree have also each filed a lawsuit in Texas. DRG filed a suit in the state district court for Harris County, Texas, while Talent Tree, four months after filing the present suit before this Court, filed suit in the federal district court for the Southern District of Texas. The suit before this Court, DRG's suit in Texas state court, and Talent Tree's suit in Texas federal court are all currently pending and all seek relief based upon the breach of various provisions of the franchise agreement.[1]

---

[1]Apparently the Texas state court case has been temporarily stayed by the state intermediate appellate court following Talent Tree's invocation of the "federal court" provision of the forum selection clause. *See* DRG's Mot. Dis., Ex. F, G (Docket #22).

The parties' franchise agreement provides the following mandatory forum selection clause:

> Any cause of action between [Talent Tree] and [DRG] arising under this Agreement will be brought in the United States District Court of the Southern District of Texas.  If that Court lacks jurisdiction, the action will be brought in the state courts of Houston, Texas and [DRG] submits to the jurisdiction of such courts.  No rights or causes of action arising from this Agreement will be lost if these venues are not available.

Franchise Agreement, ¶ 10(e), Exhibit 1, Pl.'s Compl. (Docket #1).  DRG argues that this clause places the burden of proof on Talent Tree.  Talent Tree, on the other hand, contends that the forum selection clause should be accorded little weight in the calculus required under § 1404(a).  The Court will address the significance of the forum selection clause below.  But, at the very least, the presence of the forum selection clause shifts the burden of proof on this motion to Talent Tree.  *See Viron Int'l Corp. v. David Borland, Inc.*, 237 F. Supp. 2d 812, 815 (W.D. Mich. 2002) (McKeague, J.).

In the typical case the moving party bears the burden of proof on a motion to transfer under § 1404(a).  *See e.g., Steelcase, Inc. v. Smart Tech., Inc.*, 336 F. Supp. 2d 714, 719 (W.D. Mich. 2004) (Quist, J.).  In a case such as this one, however, where the parties have contractually agreed to litigate in a particular forum, this Court has previously held that the burden of proof shifts to the nonmoving party to demonstrate why it should not be bound by the forum selection clause.  *Viron Int'l Corp.*, 237 F. Supp. 2d at 815; *see also United States v. P.J. Dick Inc.*, 79 F. Supp. 2d 803, 806 (E.D. Mich. 2000) (describing the "heavy burden of proof" that a party faces when seeking to set aside a forum selection clause based on

3

inconvenience).  Thus, Talent Tree has the burden of demonstrating that the forum selection clause should not apply in this case.

The Court now turns to the merits of DRG's motion.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  In evaluating a motion to transfer under § 1404(a), the Court has broad discretion to grant or deny the request and must determine: (1) whether the action could have been brought in the proposed transferee district; (2) whether a transfer would promote the interests of justice, and (3) whether a transfer would serve the parties' and witnesses' convenience.  *See IFL Group Inc. v. World Wide Flight Service, Inc.*, 306 F. Supp. 2d 709, 712 (E.D. Mich. 2004).  Neither party contends that their agreed upon forum would be an improper venue and, given that a suit involving these same parties and this franchise agreement has been filed in that district, it is clear that this action could have been brought in the proposed transferee venue.  Therefore, the Court will turn to the second and third prongs of the analysis.

Courts examine a number of factors when evaluating the interests of justice and convenience of the parties and witnesses including: (1) convenience of the parties and witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, (5) the interests of justice, (6) the relative congestion in the courts

of the two forums, (7) the public's interest in having local controversies adjudicated locally,

(8) the relative familiarity of the two courts with the applicable law, (9) the plaintiff's original

choice of forum, and (10) whether the parties have agreed to a forum selection clause. *Viron*

*Int'l*, 237 F. Supp. 2d at 816; *Steelcase, Inc.*, 336 F. Supp. 2d at 719-20.

1.      *Convenience of Parties and Witnesses*

        Procedurally, this case presents a somewhat unique situation in which the moving

party is requesting that the case be transferred from its district of residence to the district of

residence of the nonmoving party.  Presumably, it is more convenient for each party to

litigate the case in its own district of residence.  *See Morales v. Navieras de Puerto Rico*,

713 F. Supp. 711, 713 (S.D.N.Y. 1989).  The convenience of this forum for the parties is

mitigated, however, by two additional factors.  First, the parties agreed to litigate their

disputes under the franchise agreement in the Southern District of Texas.  While a forum

selection clause is not a dispositive factor on a motion to transfer, it is significant and, in this

case, weighs in favor of transferring the case to Texas.  *See Stewart v. Ricoh Corp.*, 487 U.S.

22, 29, 31 (1988) (holding that a forum selection clause is a significant, but not dispositive

factor under the § 1404(a) analysis), *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1136

(6th Cir. 1991).  Second, a transfer to the Southern District of Texas would also serve the

parties' convenience because the parties have a suit pending in that district involving the

breach of the same franchise agreement.  A review of the complaints filed in each respective

case reveals that the two cases encompass similar breach of contract issues arising from the

same franchise agreement.  *Compare* Pl.'s Compl. ¶ 19  (alleging breach of ¶ 5 of the franchise agreement) (Docket #1) *with* Ex. A Pl.'s Compl. ¶ 10, 14 (alleging breach of ¶ 5(a) and 8(f)(7)) (Docket #22).  It appears to this Court that litigating similar issues arising from the same agreement in a single forum would be more convenient for the parties.

Talent Tree argues that the litigation of the two previous cases involving these parties demonstrates that this district is a convenient forum.  The previous suits in this district are of limited relevance to the parties' convenience in the present case and do not tip the balance in favor of denying the transfer.  For example, the previous lawsuits do nothing to address the inconvenience of currently conducting two cases involving the same parties, same agreement, and, most likely, many of the same witnesses in two distant forums.  It is also slightly disingenuous for Talent Tree to argue that this district is a "perfectly convenient forum for the parties, notwithstanding the forum selected in the parties' franchise agreement" while vigorously contending in Texas state court that the forum selection clause mandating that suit be filed in the Southern District of Texas must be enforced.  *See e.g.* Exhibit F, G, Def.'s Mot. (Docket #22).

Talent Tree also contends that the convenience of the witnesses would not be served by a transfer away from this district.  Talent Tree points to the fact that four of the six witnesses who have been deposed live in Grand Rapids.  *See* Butler Decl. ¶ 2 (Docket #75). The convenience of these witnesses is given less weight, however, because each one is an employee of DRG, and thus "are presumed to be willing to testify in either forum despite the

6

inconvenience that one of the forums would entail."  17 JAMES WM. MOORE, ET AL.,

MOORE'S FEDERAL PRACTICE § 111.13[1][f][iii] (collecting cases).[2]  Neither party has

provided any evidence that Michigan is a more convenient forum for any non-party

witnesses.[3]  Therefore, the convenience of the witnesses is, at best, neutral because Michigan

would be a more convenient forum for DRG's employees and party witnesses and Texas

would be a more convenient forum for Talent Tree's employees.  *See Viron Int'l Corp.*, 237

F. Supp. 2d at 816-17.

2.    *Accessibility of Sources of Proof*

DRG contends that this factor favors a transfer because the bulk of Talent Tree's

documentary evidence is located in Houston, Texas.  Talent Tree responds that the

accessibility of sources of proof is not an issue in this case and does not favor a transfer.

According to Talent Tree's counsel, the relevant documentary evidence is located in Florida,

Michigan, and Texas.  *See* Butler Decl. at ¶ 3.  This factor favors neither Michigan or Texas

as the forum for this dispute, given that the relevant documents can easily be transported to

and from Texas to Michigan, and vice versa.  *See Viron Int'l Corp.*, 237 F. Supp. 2d at 817.

---

[2]In light of the two on-going lawsuits in Texas, the witnesses will already be required to travel to Texas.  A transfer, therefore, would seem to eliminate the inconvenience of attending a third court proceeding in a distant forum.

[3]Talent Tree refers to a single non-party witness who is located in California.  Butler Decl. ¶ 2.  There is no evidence that Michigan would be a more convenient forum for this witness than Texas.

3.     *Cost of Securing Witness Testimony*

Talent Tree argues that, based on the location of the majority of DRG's material witnesses and the comparative financial position of the parties, this factor favors denying the requested transfer.  DRG briefly mentions, without explanation, that this factor favors transfer.  While, in the event of a transfer, DRG will need to incur the costs of securing live testimony of its witnesses in Texas, this factor is given less weight in light of the suits pending in the Texas state and federal courts.  Due to the Texas state court and Southern District of Texas litigation, DRG will need to incur the costs of securing testimony in Texas.  Thus, it is not likely that the transfer of this matter will significantly increase the costs of securing testimony in this case.  Moreover, the continuation of two lawsuits in Michigan and Texas would likely increase the costs of securing testimony for both parties because it would be necessary to shuttle witnesses between the two forums.  Therefore, this factor weighs in favor of a transfer.

4.     *Practical Problems Associated with Trying the Case in the Least Expensive and Most Expeditious Fashion*

Talent Tree argues that this factor weighs in favor of a denial of the transfer because discovery has been completed in this case, dispositive motions have been filed, a summary judgment oral argument date has been set, and a trial is scheduled during February 2006.  By comparison, Talent Tree contends that, in the event of a transfer, the case would be delayed by at least eight months because discovery has not closed in the Texas matter, the dispositive motion deadline is in July 2006, and trial is scheduled during the fall of 2006.  While the

Court recognizes that transferring this case will result in a slight delay of the adjudication, this fact does not persuade the Court that a transfer is unwarranted.

5.      *Interests of Justice*

Talent Tree argues that the interests of justice weigh heavily against transferring this case to Texas.  Talent Tree focuses on DRG's failure to file a transfer motion during the nearly 11 months this case has been pending.  While delay can be a factor in the transfer analysis, courts generally look to see if the non-movant can show prejudice by the delay.  *See U.S. Fidelity & Guar. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1082-83 (E.D.N.Y. 1992) (citing *Babbidge v. Apex Oil Co.*, 676 F. Supp. 517, 522 (S.D.N.Y. 1987)).  Talent Tree has not provided any facts demonstrating that it would be prejudiced by the transfer at this time.  Moreover, it cannot be argued that Talent Tree would be prejudiced by the transfer to the Southern District of Texas in light of the fact that Talent Tree has deemed that forum to be an appropriate venue to adjudicate certain aspects of the franchise agreement.

The interests of justice would be served by a transfer of this case to the Southern District of Texas.  A transfer will promote judicial economy by obviating the need to pursue two actions involving the same franchise agreement in distant forums.  In the event, the two cases are consolidated, it would allow a single court to provide a final adjudication of the parties' contractual dispute.  Even if the cases are not consolidated, judicial economy is served by placing related claims before the same court.  *See Fairfax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. 1986) ("[T]he pendency of a related case in

the proposed transferee forum is a powerful reason to grant a motion for a change of venue.")

(quoting *Supco Auto. Parts, Inc., v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192

(E.D. Pa. 1982)).

6.    *Relative Congestion*

Talent Tree also argues that the relative congestion of the two courts weighs against

transferring this case to the Southern District of Texas.  Talent Tree cites recent federal court

management statistics indicating that, as of 2004, there were 372 pending cases per judge in

the Western District of Michigan, and 507 cases pending per judge in the Southern District

of Texas.  *See* Exhibit E, Pl.'s Res. Br.  Based upon this statistic, Talent Tree argues that the

transfer would not alleviate congestion in this Court in favor of a less congested forum.

Talent Tree overlooks another indicator of the relative congestion of the two courts in the

statistics it provided to the Court, the median time from filing to disposition of a civil case.

In this district, the median time from filing to disposition of a civil case was 9.7 months,

while in the Southern District of Texas the median time was 6.8 months.  Thus, although the

Southern District of Texas may have more cases per judge, this fact does not appear to result

in a greater delay in the disposition of civil cases.

Talent Tree's data also fails to account for the recent elevation of a member of this

Court to the Sixth Circuit Court of Appeals and the decision of two other members of this

Court to take senior status.  As of January 1, 2006, this Court will be operating with a single

active judge.  With a single active judge, delays in the adjudication of civil cases will

10

inevitably result, due to the increasing number of criminal cases and their priority over civil actions.  It does not appear that this factor weighs in favor or against transfer because both court dockets are significantly congested.

7.   *Public's Interest in Local Controversies*

Talent Tree argues that this factor weighs against the transfer because the Michigan public has an interest in having this dispute, involving a Michigan corporation, resolved in Michigan.[4]  Talent Tree makes too much of this factor.  At best, it is a "wash."  This contractual dispute involving the various provisions of a franchise agreement is of little interest to the public in Michigan or Texas.  Even assuming some interest in this dispute on the part of the public, it does not weigh in favor of either forum.  The Michigan public's interest arises from the location of DRG in Grand Rapids.  By the same token, the Texas public would have a similar interest based upon Talent Tree's location in Houston, Texas.  Thus, this factor neither weighs for or against transfer.

8.   *Relative Familiarity with the Law*

The franchise agreement governing this dispute contains a choice of law provision stating that the contract is governed by Texas law.  Franchise Agreement ¶ 10(d), Exhibit 1, Pl.'s Compl.  DRG argues that this factor supports a transfer in this case.  Talent Tree contends that this factor is neutral because this case does not involve complex questions of

---

[4]Talent Tree does not appear to have taken the Michigan public's apparent interest into account when filing its lawsuit against DRG in the Southern District of Texas four months after filing this suit.

state law and only requires the application of "essentially uniform" principles of contract interpretation.  The lack of complexity of the issues in this case is balanced against the "appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."  *Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964).  While the contractual choice of law provision weighs in favor of transfer, the absence of complex issues of Texas contract law suggests that this factor should be given less weight.  Thus, this factor is neutral.

9.      *Plaintiff's Choice of Forum*

The plaintiff's choice of forum is often given some weight in the transfer analysis. *Viron Int'l Corp.*, 237 F. Supp. 2d at 819.  The Court will not give any weight to Talent Tree's choice of forum in this case, however, in light of the forum selection clause selecting the Southern District of Texas, Talent Tree's residence in that district, and Talent Tree's own willingness to litigate certain issues arising from the franchise agreement underlying this case.

Talent Tree argues that its choice should be given some weight based upon DRG's choice to litigate two previous disputes involving this franchise agreement in this Court. Talent Tree's reliance on the two previous lawsuits in this Court is misplaced.  A § 1404(a) motion to transfer calls for an "*individualized, case-by-case* consideration of convenience and fairness."  *Stewart*, 487 U.S. at 29 (quoting *Van Dusen*, 376 U.S. at 622) (emphasis

added).  The parties were free to raise the forum selection clause and file a motion to transfer in the previous cases.  It does not appear that such a motion was made in either case.  The failure to object to venue in this district in previous cases, however, does not preclude that issue from being raised in the present case.  Whether in the past, Talent Tree failed to invoke the forum selection clause is of no concern to the present matter.  Talent Tree cannot use its failure to raise the issue in previous cases as evidence weighing in favor of ignoring the agreed upon contractual venue provision in this case.

10.   *Forum Selection Clause*

In *Stewart*, the Supreme Court held that a forum selection clause should be given significant, although not dispositive, weight under the § 1404(a) analysis.  487 U.S. at 29, 31.  Talent Tree argues that the clause should be given little weight due to the litigation of the previous lawsuits involving these parties in this Court and due to DRG's delay in filing this motion to transfer.  Although in this case Talent Tree has tried to distance itself from the forum selection clause, it cannot escape the fact that its own standard franchise agreement mandates that suits arising under the agreement must be filed in the Southern District of Texas.  This is a significant factor favoring granting DRG's motion to transfer.  The decision not to invoke the clause in previous cases does not effect the present analysis in this case. The clause has been properly raised in this case and clearly favors transferring the case to the Southern District of Texas.

While Talent Tree has shown that a slight delay in the adjudication of this matter will occur if transfer is granted, this fact does not tip the balance in favor of denying the transfer motion.  It is outweighed by the convenience of the parties, the interests of justice, the removal of the costs of securing testimony in two forums, and the forum selection clause. Each of these factors favors transferring this case.  The remaining factors are a "wash." Therefore, Talent Tree has failed to satisfy its burden of proof and the case should be transferred.

Accordingly, the Court grants DRG's motion for transfer of venue pursuant to 28 U.S.C. § 1404(a).  Upon the transfer of this case to the Southern District of Texas, the Clerk of the Court should review it to determine if it can be consolidated with the other pending case involving these parties or designated as a related case.  An order will be entered consistent with this opinion.


Dated: _____December 6, 2005_____        __/s/ Robert Holmes Bell_____
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE

14